**FILED**
2018 Apr-19  PM 03:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **TAMMY BADDLEY** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CV-2018-** |
| ) | **JURY DEMAND** |
| **BOOZ ALLEN HAMILTON, a corporation** ) | |
| ) | |
| **Defendants.** ) | |

---

**COMPLAINT**

---

COMES NOW the Plaintiff, Tammy Baddley (hereinafter "Baddley"), files this Complaint to be answered by the Defendants pursuant to the Federal Rules of Civil Procedure.

## I.    JURISDICTION

1.    The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 (federal question), and venue is proper pursuant to 28 U.S.C. §1391 (all parties are located within the Northern District of Alabama, and the acts complained of took place in the Northern District of Alabama).

2.    This is a suit authorized and instituted pursuant to 42 U.S.C. 12101 *et. seq.*

3.    The Plaintiff has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. 12101 *et. seq.*

4.      The plaintiff timely filed her charge of discrimination, on Augst 3, 2017, within 180 days of occurrence of the last discriminatory act. (See charge No. 420-2017-01453 attached hereto as Exhibits A).

5.      The plaintiff timely filed her lawsuit within 90 days of his receipt of her "Right-to-Sue" letter from the EEOC, which she received on May 11, 2017.  (See Right to Sue Letter attached as Exhibits B).

## II.     PARTIES

6.      The Plaintiff, Baddley, is over the age of nineteen (19), is a citizen of the United States and is a resident of the State of Alabama.

7.      The Defendant, System High is an entity subject to suit under 42 U.S. C. 12101 et seq .

8.      The Defendant employees at least twenty five (25) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year.

## III.    FACTUAL ALLEGATIONS

9.      The defendant employer discriminated against the Plaintiff because of her disability, in job assignments, discipline, and other terms conditions and privileges of employment.

10.     The Plaintiff worked on a contract for the Federal Government with Sentar, Inc. from December 15, 2015 to August 31, 2016.

11.     In August, 2016 Booz-Allen-Hamilton won the contract, and the Plaintiff's position moved from Sentar, Inc. to System High Corporation.

12.     In August, 2016, the Plaintiff was hired to work for System High Corporation in International Affairs Analyses in DIS, where she was already working before Booz-Allen-Hamilton took over the contract, however, she was placed in EIR.

13.     The Plaintiff marked on her job application that she had a disability and listed the disability as PTSD.

14.     The Plaintiff held several private conversations with her supervisors at Booz-Allen-Hamilton, and her supervisors at System High Corporation outlining the details of her PTSD and the physical effects of her PTSD when she was placed in certain circumstances and requested to be moved back to International Affairs Analyses.

15.     The Plaintiff's PTSD was a mental/physical impairment that substantially limited one or more major life activities.

16.     The Plaintiff's PTSD caused her to have severe anxiety in loud chaotic, stressful or crowded environments, and she could not be engaged in physical activity with men.

17.     When the Plaintiff was placed in circumstances listed in paragraph 16 it can trigger's the Plaintiff to have extreme anxiety and

become catatonic, unable to speak or communicate, unable to concentrate, unable to think, to have siezures, or be hospitalized and unable to work.

18.    When the Plaintiff's episodic PTSD symptoms were not active, she was able to perform all of the essential functions of her job.

19.    The Plaintiff could control and prevent the episodic symptoms of her PTSD by working in quiet, controlled, less crowded environments, and having no physical activity with men.

20.    In International Affairs Analyses, there were only 8 employees working on paperwork, and the environment was very controlled, quiet, and less crowded.

21.    The Plaintiff had no events to trigger her PTSD in International Affairs Analyses.

22.    When the Plaintiff was hired by System High Corporation, she was told, despite her offer letter indicating she was hired for International Affairs Analyses, she was going to be placed in EIR.

23.    When the Plaintiff arrived in EIR, she noticed the environment would be difficult to control the symptoms of her PTSD as there were about 40 employees, and it was very loud, hectic, and chaotic with supervisors yelling, cussing, slamming things down, hitting walls, ect… for no apparent reason on a regular basis.

24.     The Plaintiff approached Human Resources at System High Corporation, Sara Lord, and explained the problem.

25.     Sara Lord placed the Plaintiff in contact with her supervisors at Booz-Allen-Hamilton Timothy Broadnax and Rob Ketterer, and the Vice President at System High Corporation, Rob Howe, after which she explained to each her problem, and requested the accommodation of going back to International Affairs Analyses with a pay cut.

26.     The Plaintiff suggested she switch places with another employee, Randy McKee, who they wanted in EIR, which would save them $1,000 overall.

27.     The Plaintiff's supervisor's Timothy Broadnax and Rob Ketterer were angry that she spoke with Vice President, Rob Howe, so they verbally counseled her and denied her requested accommodation.

28.     In October, 2016, EIR was going to have a team building day playing basketball in the gymnasium.

29.     The Plaintiff contacted her supervisor, Chris Karlson, asking to be excused.

30.     Chris Karlson at first refused to excuse the Plaintiff, so the Plaintiff held a private meeting with her wherein she explained the details of

her PTSD, and why she could not engage in physical activity with men in a loud gymnasium.

31.   Chris Karlson eventually told her it was fine to work from home, but also ordered her to take a PTO day.

32.   Chris Karlson was very active in organizing and putting on EIR day, and she made it very clear she was not happy about the Plaintiff not going to EIR day because of medical reasons.

33.   During EIR day, Mr. Sheehy, the government client, asked where the Plaintiff was and Chris Karlson lied to him telling him she did not know.

34.   The Plaintiff heard Mr. Sheehy was looking for her so she emailed him explaining her absence, and he came to her cubicle to thank her for her explanation.

35.   Tom Clark told the Plaintiff Mr. Sheehy was looking for her, and the Plaintiff explained her team lead, Chris Karlson knew where she was and that she had already handled it with Mr. Sheehy by emailing him.

36.   Tom Clark asked to see a copy of the email so the Plaintiff showed it to him.

37.   The next week, Tom Clark repeatedly pulled the Plaintiff aside into a private room to discuss "issues" Chris Karlson was having with her.

38.   The Plaintiff explained these meetings were triggering her PTSD, causing her to be sick.

39.   On November 2, 2016, the Plaintiff received a letter of counseling and a written warning for her absence on EIR day and for taking PTO even though all of it was all pre-approved and ordered by her supervisor, Chris Karlson.

40.   In her letter of counseling, the Plaintiff was criticized for speaking directly with Mr. Sheehy, a government client.

41.   There were no rules against speaking directly with a government client, and the Plaintiff and other employees were required to speak with the government client on a daily basis to perform their job duties.

42.   Other employees who did not have a disability, who had not requested accommodations, were allowed to skip EIR day without discipline.

43.   Between November, 2016 and February, 2017, Chris Karlson would continuously complain about the Plaintiff to Tom Clark, and he would pull her aside to discuss it.

44.   On February 17, 2017, Rob Ketterer emailed the Plaintiff asking the status of an etasker.

45.     The Plaintiff told Rob Ketterer that the etasker had to be signed by the government client, and that particular client was off on vacation until Tuesday, February 21, 2017.

46.     Chris Karlson became upset, as she threw things in the office and questioned the Plaintiff loudly, cussing at her, as to why she was not performing the task.

47.     The Plaintiff showed Chris Karlson the etasker which contained explicit directions that it had to be signed by the government client, and she left stating sarcastically, "okay" while throwing her pen down on the desk.

48.     The Plaintiff sent an email to her supervisor, Tom Clark, about Chris Karlson's behavior and explained what happened.

49.     Later the Plaintiff called Larry Rickard, as she does every day on etaksers, and asked him for written guidance.

50.     Larry Rickard asked specifically what was happening, and the Plaintiff told him this particular etasker was unusual and confusing, she was having trouble explaining it to Chris Karlson and Rob Ketterer, explained they seemed confused since they do not work with etaskers on a regular basis, and asked for written guidance to help everyone with the process to which he readily agreed.

51.     At no time did the Plaintiff complain of the behavior of Chris Karlson and Rob Ketterer during her conversation with Larry Rickard.

52.     The Plaintiff was accused of complaining to a government client, and then lying about it after she was accused, which were both false.

53.     The Plaintiff was terminated from System High Corporation, and banned on any future work on the contract (eliminating working for approximately 75 companies) for these pretextual allegations made by Chris Karlson.

54.     Two hours after the Plaintiff was terminated, Larry Rickard was contacted, and it was explained to him she was terminated because she lied about her complaint of Chris Karlson and Rob Ketterer to him.

55.     Larry Rickard confirmed the Plaintiff did not complain about Chris Karlson and Rob Ketterer and simply asked for written guidance on a confusing etasker.

56.     After the Plaintiff's termination, supervisors and Booz-Allen-Hamilton and System High Corporation held meetings with the contractors and disparaged the Plaintiff, claiming she lied, in front of all of her former co-workers.

57.     Booz Allen Hamilton and System High were joint employers as it exercised sufficient control over the terms and conditions of plaintiff's employment due to:

a. BAH employees Karlson, Ketterer, and Broadnax being her direct supervisors,

b. Broadnax and Ketterer refusing to accommodate the plaintiff upon her many requests,

c. Karlson attempting not to accommodate the plaintiff and penalizing her a PTO day when she was able to be off work,

d. by Karlson providing false information to the plaintiff's System High supervisor which was utilized in terminating the plaintiff,

e. by Karlson providing false information to the government client that was utilized in disciplining the plaintiff,

f. by being involved in the plaintiff's termination, and

g. by directing System High not to allow the Plaintiff to work on any contracts.

## COUNT I- DISABILITY DISCRIMINATION-FAILURE TO ACCOMMODATE

57.     The Plaintiff adopts and re-alleges each and every allegation contained in paragraphs 1-56 of the complaint as if fully set out herein.

58.     The Plaintiff had a disability, PTSD.

59.     The Defendant's was notified of the Plaintiff's disability on her application for employment, and numerous times thereafter through conversations with her supervisors, and Vice President, when she was moved to EIR, through conversations with her supervisors when she was written up for failing to attend EIR day, and numerous other times privately when Chris Karlson complained of her.

60.     The Plaintiff repeatedly requested to be accommodated by switching her back in International Affairs Analyses where it was quiet, less hectic, and less crowded, where she was working prior to the change in contract, allowing her to take a pay cut, and allowing another employee whom they wanted in EIR to go back to EIR, saving the company $1,000.00.

61. The Defendant failed to accommodate the Plaintiff with her requested accommodation, and verbally counseled her, wrote her up, and terminated her for requesting the accommodation.

62.     The Plaintiff requested accommodation to be excused from EIR day.

63.     The Defendant, thorough Chris Karlson, eventually agreed to allow the Plaintiff to work from home, but ordered her to take a PTO day, then wrote her up for failing to go to EIR day, and not following proper PTO procedures.

64.    There was no burden or undue hardship imposed on the Defendant to accommodate the Plaintiff with her requested accommodations, and the Defendant would have profited $1,000.00 per year.

65.    The Defendant's unlawful actions have caused the plaintiff to suffer humiliation, shame, stress, embarrassment, fear, anxiety, physical illness, loss of concentration, loss of focus, inability to communicate, depression, sadness, financial problems, lost wages (front and back), lost benefits, loss of seniority, damage to career, damage to reputation, emotional distress and out of pocket expenses.

## COUNT II- DISABILITY DISCRIMINATION-HOSTILE WORK ENVIRONMENT

66.    The Plaintiff adopts and re-alleges each and every allegation contained in paragraphs 1-65 of the complaint as if fully set out herein.

67.    The Defendant continuously harassed the Plaintiff,   by intentionally placing her in situations that increased her episodic symptoms of her PTSD such as: in EIR where the environment is loud, hectic, stressful, and crowded, verbally counseling her for requesting an accommodation, denying her accommodation because she went to the person HR put her in contact with to request the accommodation, attempting to make her attend

EIR day where she would be required to place basketball in a loud, crowded gymnasium and have physical activity with men, by continuously yelling and screaming at her for no reason after her requested accommodation, by lying about the Plaintiff's whereabouts in attempt to get her in trouble, by writing up the Plaintiff for being out for her PTSD, by continuously complaining and having the Plaintiff repeatedly pulled into rooms to be questioned and falsely accused of wrongdoing increasing her symptoms of PTSD, were physically threatening to the Plaintiff by cussing and throwing things in the office, and throwing her pen down, by terminating her for false reasons, and by not fixing the problem after her termination when it was verified she was telling the truth.

68.     The Defendant actions were so frequent, severe, threatening, humiliating, that the actions altered how the Plaintiff was able to work, and created a hostile work environment.

69.     The Defendant's unlawful actions have caused the plaintiff to suffer humiliation, shame, stress, embarrassment, fear, anxiety, physical illness, loss of concentration, loss of focus, inability to communicate, depression, sadness, financial problems, lost wages (front and back), lost benefits, loss of seniority, damage to career, damage to reputation, emotional distress and out of pocket expenses.

## COUNT III-DISAIBILITY DISCRIMINATION- DISCHARGE

70.    The Plaintiff adopts and re-alleges each and every allegation contained in paragraphs 1-65 of the complaint as if fully set out herein.

71.    The Plaintiff was verbally counseled, received a letter of counseling, was written up, and terminated based on her PTSD.

72.    Chris Karlson made it clear she was angry the Plaintiff did not go to EIR day due to her medical condition.

73.    Chris Karlson lied to the government client stating she did not know where the Plaintiff.

74.    The Plaintiff notified her supervisor and the government client that Chris Karlson knew she could not attend for her PTSD and discussed the issue with them at length.

75.    The Plaintiff was written up despite the fact she was out for her PTSD.

76.    After this incident, from that day forward, Chris Karlson continuously complained about the Plaintiff, for various false reasons.

77.    Chris Karlson falsely reported the Plaintiff for complaining to a government client and lying about it.

78. The Defendant terminated the Plaintiff without contacting the government client or conducting any meaningful investigation into Chris Karlson's false allegations.

79. The Defendant's unlawful actions have caused the plaintiff to suffer humiliation, shame, stress, embarrassment, fear, anxiety, physical illness, loss of concentration, loss of focus, inability to communicate, depression, sadness, financial problems, lost wages (front and back), lost benefits, loss of seniority, damage to career, damage to reputation, emotional distress and out of pocket expenses.

## COUNT IV- RETALIATION

80. The Plaintiff adopts and re-alleges each and every allegation contained in paragraphs 1-79 of the complaint as if fully set out herein.

81. The Plaintiff requested accommodations for her PTSD.

82. The Plaintiff was verbally counseled for requesting an accommodation for her disability from the Vice President as HR told her.

83. The Plaintiff was written up for requesting an accommodation for her PTSD and by being allowed by her supervisor to work from home, but requiring her to take a PTO day.

84. The Plaintiff was constantly called into private discussions after she requested an accommodation to discuss the issues of Chris Karlson.

86.    Chris Karlson yelled and screamed at the Plaintiff when the Plaintiff was her job correctly, threw things in the office, and continuously complained of the Plaintiff once she learned she had a disability.

87.    Chris Karlson falsely accused the Plaintiff of contacting a government client and complaining of her, then accused her of lying to get her fired, after she learned of her disability.

88.    Each of these acts were in direct retaliation to the Plaintiff's request for accommodation not to go to EIR day due to her medical condition.

89.    The Defendant's unlawful actions have caused the plaintiff to suffer humiliation, shame, stress, embarrassment, fear, anxiety, physical illness, loss of concentration, loss of focus, inability to communicate, depression, sadness, financial problems, lost wages (front and back), lost benefits, loss of seniority, damage to career, damage to reputation, emotional distress and out of pocket expenses.

## V. **DAMAGES**

90.    The Plaintiff adopts and re-asserts each and every allegation of paragraphs 1-89 as if fully set out herein.

91.    The Defendant's unlawful actions have caused the plaintiff to suffer humiliation, shame, stress, embarrassment, fear, anxiety, physical

illness, loss of concentration, loss of focus, inability to communicate, depression, sadness, financial problems, lost wages (front and back), lost benefits, loss of seniority, damage to career, damage to reputation, emotional distress and out of pocket expenses.

## VI.   **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully prays that this Honorable Court assume jurisdiction of this action and after trial:

1.      Enter an Order requiring the defendant to make the Plaintiff whole by awarding her the position she was hired to perform, in International Affairs Analsyses, lost wages (front and back pay plus interest), loss of benefits, compensatory damages, liquidated damages and punitive damages.

2.      The Plaintiff prays for such other relief and benefits as the cause of justice may require, including but not limited to, attorney's fees and expenses.

**THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully Submitted,

Patricia Gill

Patricia A. Gill
GIL047

Attorney for Plaintiff

OF COUNSEL:
PATRICIA A. GILL, P.C.
PO Box 55404
Birmingham, AL 35255
Phone: (205) 307-9555
Facsimile:  (205) 980-9809
E-Mail:  patriciagill@yahoo.com

## PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:

Booz Allen Hamilton
Registered Agent-CT Corporation System
2 North Jackson St. Suite 605
Montgomery, AL  36104